The first case we are going to hear this morning is Redding Health v. Bear Stearns, Appellant No. 16-4234. Good morning, Your Honors. And may it please the Court, my name is Jonathan Youngwood, I represent the appellant and defendant in this matter, and I would respectfully request five minutes for rebuttal time. That's granted. Thank you. Your Honors, the district court in certifying this matter for interlocutory appeal last October identified a single question for review by the court, which is whether or not the Supreme Court's decision in Atlantic Marine requires a district court to enforce a form selection clause by transferring declaratory judgment action seeking to compel arbitration even if the district court came to the view that the arbitration itself should be compelled. Doesn't that question depend on whether this form selection clause captures an arbitration? Respectfully, Your Honor, I don't think it does. I think that is the underlying question and the question for the district court and now for this court was which court should make that determination. This isn't a question of arbitrability, this is a question of whether an arbitration clause continues to exist even in light of the form selection clause, because from your perspective as I understand it, the form selection clause essentially renders as a null the rule of FINRA rule arbitration, right? That is our ultimate position, yes, Your Honor. It was our position in the alternative before the district court and it will be our position if the case is transferred to the Southern District of New York. And it's your position that Bear Stearns, as a member of FINRA, has no obligation to abide by its rules and regulations? That is certainly not our position, Your Honor. Then why are you opposing arbitration? We're opposing arbitration because two highly sophisticated parties. This is not a case, a typical FINRA case. Okay, but the FINRA rules don't say this applies except in the situation of highly sophisticated parties, right? It applies to all members equally, whether they're sophisticated or whether they're little innocent jerks on the street. And their customers. I agree with all the statements that Your Honors have just made, but here we have a contract that clearly states that all actions and proceedings related to, I'm sorry, arising out of the broker-dealer agreement should be resolved in the Southern District of New York. If you sign a contract, you can disregard the rules and regulations? You can have a contract supersede certain rules and regulations, is how I would phrase it, Your Honor. And looking at the rules and regulations, do they say that you can supersede these rules and regulations, if you so desire, by signing a contract? They certainly don't have... I mean, it seems like this is a great big loophole that you're saying exists, which to me seems ridiculous in the purpose of FINRA and the supervision of the Securities Act to protect consumers, to permit people to sign contracts and say to hell with the rules and regulations. Your Honor, I really don't believe that's what this contract says. It's a very specific... Well, it implies it, doesn't it? No, I don't believe so, respectfully, Your Honor. It's... I don't dispute that one of the purposes, if not the primary purpose of the contract, is to preclude you having to go to FINRA arbitration. One of the negotiated, agreed-to provisions of the 2005 and 2007 broker-dealer agreements is to specify a form for the resolution of a very complex matter. Is this yours? Yes. Okay. So, before I get to the merits, though, and kind of understanding where Judge Roth is coming from, your answer to Judge Schwartz confused me a little, although it is consistent with your briefing. Is it your position that all we need to do is focus on whether Atlantic Marine controls and leave the merits of this thing totally alone? Not get into patent, not get into the Second Circuit, the Ninth Circuit, the Fourth Circuit, but just focus solely on the 1404A issue? That is our position, Your Honor, and that, I believe, is the position, frankly, that's the question, with the district court certified. But that presupposes that we can do that without looking at the merits, and I think Judge Schwartz's point, and one that I tend to agree with, if I understood Judge Schwartz, was can we really do that? And I think this is unique, isn't it? Because unlike the Second, Ninth, and Fourth, we have the transfer issue here. That was not at issue. It was not argued by anyone in any of those prior cases. It was argued, Your Honor, in the New Mexico case with a contrary result, and a very detailed decision analysis, which I know you're all familiar with, and it's not obviously in any way controlling. We would submit that it's persuasive and well thought through. You've raised the other circuits that have addressed this. Obviously, under the Second or the Ninth, we would prevail here. I submit to you that under the issue before you, the specific issue before you, we prevail under the Fourth as well. But what about the Third Circuit precedent in Patent that says, if a form selection clause is going to refer to arbitration, it needs to say so? We are bound by that, and how do you overcome that requirement? Well, the Patent Clause was very different than the clauses at issue here, respectfully, Your Honor. I'm aware it talks about any controversy, right? Well, the difference, I was going to say, is the form selection clause in Patent, two issues, several issues differ in Patent. In one, Patent was actually initiated litigation in the proper district, so there was no transfer issue. I understand it wasn't a transfer issue, but the issue about whether the form selection clause should have any play in that dispute was central, and it's the same issue here. And our language, and I'll let you respond, our language in Patent seems to be pretty direct, and I don't know how you overcome Patent. Well, I submit to you, Your Honor, Patent is not a mandatory form selection clause like the one here. Patent required the parties to submit to jurisdiction in a certain district in a certain form. It did not require them to cease from bringing their actions in other jurisdictions or form. They could not escape it if it's appropriate, but they could also choose to go somewhere else. Here we have very, very specific controlling language, and there's a whole debate in the Second Circuit between these types of language that is as explicit as it can be that this is the only place, the New York itself, and for the O5 agreement, the Federal Court, where these matters can be resolved. It's as explicit as it can be if one interprets actions and proceedings to include arbitration from your point of view, but we do know there's interpretations that say it doesn't. It only includes in-court matters. I guess I'm back to how do you get around Patent, and if I understand your answer is the Patent Clause is different because it is a waiver of personal jurisdiction objections? I think I would submit to Your Honor that the Patent is not a form selection clause. It's a submission to jurisdiction clause. These are form selection clauses. The third distinction, so the first being Patent was actually brought in the right place geographically, second, what we've just discussed, and the third is it was long before Atlantic Marine, and the entire brief, save a paragraph or two of the appellee's brief, the entire analysis of the judge below does not address Atlantic Marine at all. Let's talk about Atlantic Marine. Did you find any case where Atlantic Marine was applied in the context of a situation where the parties had also had some arbitration agreement that existed? Well, the New Mexico case that we've been discussing, Your Honor, is the most on-point authority. Okay. But what I would submit to you that if you don't transfer it, if you don't order a transfer, but at least you don't apply Atlantic Marine and test to see if it should be transferred, and I'm happy to go through that analysis, so I don't think there can be much dispute that if we apply Atlantic Marine, the case gets moved. If you don't transfer it, Atlantic Marine has no meaning. It has no meaning at all. But isn't there a difference, though? There's some case law out there that talks about the sequence of decision-making and the obligation to deal with FAA, following the FAA's procedure, so you're with me on this. You may not agree with me, but we all might. I might. I know what you're talking about. Yes. And with respect to the sequencing, doesn't the FAA require that arbitration issues get resolved before anything else? Well, there's also authority in the Seventh Circuit, Second Circuit, and they're all cases in our brief that talks about how personal jurisdiction can be something that's decided in advance. You can't order an arbitration if you don't have personal jurisdiction. And there are other cases, including an unreported, I think, decision of this Court, that says you don't decide the motion to dismiss, talks about the motion to dismiss and not deciding that before the motion to compel. There's actually two unreported decisions that do just that. You do arbitration issues first, and then everything else. My submission to you, Your Honor, would be that this motion to compel, if you have this scale of a motion to dismiss deciding the ultimate, ultimate merits, right, and your personal jurisdiction, which we know is the first thing a court must consider or subject matter jurisdiction, you can't rule on something without it. This is much more akin to a subject matter or a personal jurisdiction issue. There's been no objection to personal jurisdiction. No, I'm not saying there is. We have not objected to personal jurisdiction or we objected to federal court subject matter jurisdiction as a technical matter. But my argument to you, as the New Mexico Court held, is that this is a threshold issue that disappears and becomes completely irrelevant if you don't address it, and that this Court effectively under Atlantic Marine, or perhaps more precisely, the District Court effectively under Atlantic Marine, had no power to issue the ruling it did before it ruled on the transfer motion. If the Form Selection Clause doesn't cover arbitrations, then we don't have to deal with the Atlantic Marine's disparities, right? And this is where I get to Carilion, the Fourth Circuit case. Whether or not it covers arbitrations, the one thing that even the Carilion Circuit agreed with, a case that went against us, went against me, I argued that case, was that any litigation coming out of the broker-dealer agreement would be in federal court. And they talked about post-arbitration litigation, but they didn't limit it to that. It says any litigation, and is that any litigation? But couldn't you say the Carilion Court was saying that the arbitration rules that Judge Roth talked about can coexist with the Form Selection Clause in that for litigation, meaning the enforcement of the arbitration award or an application to vacate it, the form has been identified. And that way the rule can exist and the clause can exist. Why is that a wrong interpretation? I don't think that, well I do think it's a wrong interpretation, but I don't think it's a wrong interpretation of the case. I'm asking why it's a wrong interpretation of this clause. It's a wrong interpretation of this clause because by the claimant's own admission, their case is an action. By their own admission, their case is a proceeding. So it fits squarely within the clause, and as the Second Circuit, Ninth Circuit, and other district courts have held, it fits right in there. I mean the Carilion decision has been highly criticized by other courts as, you know, word plain, for lack of a better word. It makes an argument that you can't have an arbitration in court, therefore the clause can't apply to arbitration, but it misses the fact that you can't have a state court proceeding in federal court. It's a circular, it's very clever, I give it that, but it's very circular, and, but on the, I know my time has expired, let me say this and I'll have time reserved, it is a correct interpretation of Carilion that litigations that come out of the broker-dealer agreement end up in court, including post-arbitration, you know, whether or not you enforce the case or not. But that applies, the words they use are any litigation, not just post-arbitration litigation. Any litigation includes this exact thing, which is who decides if the clause applies to the arbitrations or not. Okay, thank you counsel, we're happy on rebuttal. May it please the court, Mark Strassman, Kirby McInerney for Reading Healthcare System. Good morning. Good morning. Golden Empire and City of Reno were wrongly decided and this court shouldn't follow them. Those decisions assume that FINRA Rule 12-200 was waivable without considering Rule 22-68D or Section 29A. But isn't your argument really, aren't you asking us to equate and give equal weight, if not more weight, to a FINRA rule than to a contractual obligation that two represented parties enter into, right? Yes. Why should we do that? I mean, you have FINRA rules that govern the conduct of its members and give certain rights, arguably, to its customers, customers of the members, right? But then those same entities turn around and enter into a contract and they agree to things. Under the FINRA rule and Section 29 of the Exchange Act, that as construed that way, the provision is construed that way, is void. It's ineffective. That might be what it says, but it's ineffective. Besides that, under the controlling precedent in this circuit, that's not what it says. A forum selection clause that doesn't specifically reference arbitration doesn't include arbitration. Well, but the language has changed, right? I think to counsel's point, the language in patent, by the way, if you, how do I want to ask this right? Who's on which side here? Do we need to reverse or overrule patent in order for your opponent to win the case? No, Your Honor. You could rule solely on the basis of FINRA 2260AD and Section 29A of the Exchange Act, either one of those, and not even, and hold that any purported waiver would be ineffective. So you don't have to get to the construction. Through the FINRA rules as having the force of federal regulation or force of federal law, that takes precedent over state law contract rights and obligations. Correct. And there's a lot of law that says that, that that does take precedent over any state contract law. That's correct. But then you sign a contract, which at least as it applied to arbitration, is contrary to FINRA. The contract was... Are you doing a little double dealing then? No, the contract was not sufficient to give us notice that it included arbitration, because it didn't specifically include arbitration. And in the court's patent case, that's exactly what it said. It said in order to effectively give the customer notice of what it is waiving, it has to include a specific reference to arbitration. Right, but that was 30 years ago, right? And the language has evolved. And you don't disagree that all actions and proceedings include arbitration. In some contexts, under ordinary state law contract interpretation principles, yes, that is correct. But when you have a presumption in favor of arbitrability that applies, which applies in a scope type of case, a case involving scope, as opposed to the existence of the contract, a matter of... But it has to be ambiguous for us to resort to a presumption of arbitrability. Why is this ambiguous if actions and proceedings include arbitration? I believe the court is referring to the language in Granite Rock that talked about ambiguity cases. I have two responses to that. First of all, that's over-reading Granite Rock. Granite Rock was referring to its own labor cases where ambiguity was the issue. But nevertheless, this is an ambiguity case. The court in patent said that a foreign selection clause that doesn't specifically include arbitration is, quote, at least ambiguous, close quote, with respect to whether it includes arbitration. And we cited that and said that that reasoning applies here. When you have a waiver that is by virtue of a writing or an alleged waiver of an SRO rule that is by virtue of a writing, as opposed to by inconsistent litigation conduct or something like that, the problem is indistinguishable from an ambiguity issue. And, in fact, it is an ambiguity issue. The ambiguity is, does the foreign selection clause that doesn't specifically reference arbitration include arbitration? So all the cases, the Fourth Circuit, the Second Circuit, the Ninth Circuit, everyone agrees that a contract can supersede Rule 12-200. Everyone agrees. As I read the cases, there's unanimous agreement on that. The only difference is whether it sufficiently references arbitration. And the language from patent, here's the language from the Fourth Circuit, which is the best language for you, I think. Any such provision must be sufficiently specific to impute to the contracting parties the reasonable expectation that they are superseding, displacing, or waiving the arbitration obligation. And if we're all in agreement that all actions and proceedings include arbitrations, why isn't that sufficiently specific such that we could decide this case for your opponent and not have to touch patent? There are two responses to that. First of all, in those cases, 2268D and 29A were not raised. There's some argument that it was raised by post-argument letter in Golden Empire. But we go through that in our brief. 29A wasn't mentioned at all. 2268D was mentioned. But the defendants argued that it was waived because it hadn't been raised previously in the litigation. And the fact that the Second Circuit didn't mention it suggests that they accepted that argument. Nevertheless, they weren't discussed. And those courts did not have the benefit of the FINRA guidance, which only came out in July of 2016, I think it was, reminding the industry that those provisions rendered 12-200 unwaivable. So you want us to give our deference to the FINRA notification that was sent out? We're not necessarily saying they're entitled to agency-level deference. But it's entitled to wait because the FINRA is an expert in its own rules. And defendants really haven't raised any argument to explain what it is about the FINRA guidance that's wrong. How do we reconcile that with, and it goes off to what Judge Papert was asking, with the fact that at least our case law focused on patent. Patent says if it's specifically mentioned, it can be part, you could have a forcible form selection clause and be forced to go into court as opposed to going to the agency arbitration. The issue wasn't raised. That's the response to that. The response to that is the issue wasn't raised. So you're suggesting that that panel may have said, and not only was it not specifically referenced, but Section 29, it would have been inconsistent with Section 29 to allow a party to try to contract away a FINRA rule. And we know that Section 29 has been broadened since patent to include the rules of the self-regulating organizations. Is that right? I'm sorry. It has been amended now, yes. So at the time of patent, it did not include SRO rules, so maybe they could not have raised Section 29A at that time. But now it is clear that Section 29A includes SRO rules. So there's no question that this is an issue that's implicated. And that's what the guidance says, and these courts didn't have the benefit of the guidance, and it wasn't raised or it wasn't adequately raised. And at a minimum, those courts didn't analyze the issue, and a decision that doesn't analyze an issue isn't persuasive authority on that issue. But getting back to the collision, the point where the Golden Empire and City of Reno decisions collide with this patent decision, this court's circus patent decision, and that's on the presumption in favor of arbitrability. What those cases say is that they characterize the issue as whether an arbitration agreement existed as opposed to an issue of scope, and they hold the presumption inapplicable. And that's how they get to where they are. They apply ordinary contract principles, unsupplemented by the presumption in favor of arbitrability. But waiver is an issue of scope that's entitled to the presumption, and the Supreme Court classified it as such in the Moses H. Cohn case where it said— Why do you feel the need to characterize this as an issue of scope? And why not, from your point of view, look at it as an effort to undo even the existence of arbitration? Because one view of these facts could be the form selection clause seeks to eradicate the arbitration agreement as embodied by the rules. So isn't this question about whether the arbitration agreement continues to exist in light of the form selection clause? So is this an existence case, not a scope case? No, that's not the way the Supreme Court looks at it. They look at a waiver of arbitration of an existing agreement to arbitrate. They look at a waiver of that as a scope issue, and they said that very expressly in Moses H. Cohn. They said any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language, i.e. ambiguity, or an allegation of waiver delay or a life defense to arbitrability. So waiver as a defense to arbitrability is a type of scope problem, according to the Supreme Court. And this circuit in Patton said exactly the same thing. They adopted this language, this logic that I'm saying. They said that the question of whether the form selection clause, and they called it a form selection clause, not a consent to jurisdiction clause, whether the form selection clause superseded the SLO was a waiver issue, and they cited the language from Moses H. Cohn that I just quoted, this circuit did in Patton, and then it said we're applying the presumption of arbitrability, and that's how they concluded that. There was something in the briefs, I can't remember if it was yours or the amicus brief, which touched on disciplinary measures that FINRA can take on its members for violating its rules. What would those include? And why wouldn't they be sufficient to allow the rules to coexist with a member's decision to freely contract with a customer on the terms that the member and the customer sees fit? I'm not sure what the discipline would be, but a court should not enforce an agreement that contradicts SLO rules as a matter of public policy. Okay, that's public policy, but let's talk about law. Law, 29A. 29A overrules state law contract rights, overrules the party's ability to contract, even if the customer prefers to go to federal court. Wouldn't that just come up, though, if the customer doesn't say they want to go to arbitration, they'd go to federal court, right? Yeah, that would be inconsistent with litigation conduct, and that would be a waiver. But I'm still hung up a little bit on, you know, you want us to defer to FINRA's rules. You want us to have them take priority. And you want us to hold the broker-dealers to the FINRA rules. Okay. The FINRA rules have teeth, I learned from the papers. Why not just let FINRA enforce its rules? Could they be fines? And let the broker-dealers take their chances. I mean, enforcement of the rules could, in fact, modify their conduct with respect to these contracts, couldn't it? Well, you judge. I mean, it's a separate issue whether or not FINRA decides to allocate its resources. Well, it's not separate because a lot of your argument is, hey, FINRA has these rules, and you can't let broker-dealers violate the FINRA rules, even if they want to contract with a sophisticated party who agrees with them. And my only point is, why do they have to be mutually exclusive? Why do we have to give more weight to FINRA's rules than we do to the law and to legal principles of contract? FINRA has gone to the trouble of issuing this guidance. And I imagine that they did so in the hopes that it would be read by courts in these kinds of cases. You know, we can't explain when FINRA decides to, you know, exercise its prosecutorial discretion to go after a violator. So whatever FINRA or some organization decides, we should just go along with, even if it conflicts with centuries of contract law principles. This doesn't conflict with centuries of contract law principles. Under the interpretation that this court gave in Patton, the form selection clause – But the language is way different. I mean, you have to acknowledge that. We've had 30 years of evolution of form selection clauses. Just in these second, fourth, ninth circuit cases, you can see the arguments changing, the arguments evolving. So let's bring it forward. I disagree with that. You disagree that the language in Patton is different? Correct. The form selection clause here says all actions and proceedings. Right. Defendants neglect to mention that the form selection clause in Patton said controversies arising under the agreement. That's arguably even broader than all actions and proceedings. It's not just the ones that are brought in actions and proceedings. It's any controversy arising under the agreement. And the court there didn't say that the clause is insufficient because it wasn't sufficiently broad to encompass arbitration. It said it's because it wasn't specifically referenced, because you had to specifically reference it in order to put the customer on notice, in order for the waiver to be knowing. That's what the Patton said. And to rule out the possibility that both the clause and the form selection clause can be read in harmony, to coexist, which is what the court did in Patton and what the district court here said, the clause is the form selection clause is not meaningless. It means that any action to enforce an award must be in that district. And if I can turn for a moment to the argument, Bear Strings' argument that the form selection clause covers where we can bring this action to compel, that's just untrue. I'm going to brief this. The form selection clause only covers actions arising out of the broker-dealer agreements. And this action arises out of, meaning that it seeks to enforce rights and duties originating from FINRA 12-200. Bear String's response to this is that we should go one step further and examine the source of the rights and duties under 12-200. But that source is Bear String's membership in FINRA and its agreement to adhere to FINRA rules, not the broker-dealer agreements. I'm curious about this. Why did you agree to stay, I don't know if it was you or your client, agreed to stay to FINRA arbitration pending the decision in Gold Empire? We thought that the Second Circuit decision may be helpful to our analysis of the issues, and we thought that it would be appropriate at that time. It wasn't because... Now you're telling us just ignore it. That's correct. That's correct. Well, we have no problem ignoring the Second Circuit. Okay. One other point I'd like to make, if I may, and I'm a little over time. Bear String says that the broker-dealer agreements are the only basis to say that we're a customer. Well, that's just not true. We pled another basis, namely that Bear String was ready... I don't think anyone's disputing you're a customer. But it's not just by virtue of the broker-dealer relationship. They were also our underwriter under a distinct contract, the Contract for Purchaser Underwriting Agreement, pursuant to which they were obligated to purchase the ARS and resell them to investors at a specific offering price. And we specifically pled that as a basis for our customer relationship. And we briefed the issue below. We said every quip that has addressed the issue has held that the issuer of securities, such as an issuer of securities such as Reading, is a customer entitled to demand arbitration of a dispute with its underwriter. That's at JA 40 to 41. And Bear String didn't challenge that below and doesn't challenge that on appeal. We don't think that that's an issue. That's a controversy for the purposes of this appeal. Thank you for your time and your argument. We're here on rebuttal. Thank you, Your Honors. I want to address the question as to whether or not you need to overrule Patten. I think the answer is clearly no, you don't. But before I do, I just want to pick up where Your Honor asked the question, which is why did Reading agree to stay this case for years pending the decisions in Golden Empire? The answer is in the appendix, joint appendix of 235 and the stipulation the parties signed. The reason they did it is that they thought that Golden Empire and the companion case would be dispositive of the issues presented here. They are. I don't believe it ever occurred to them that they would then come to another district court to try and get around Golden Empire. I don't think it ever occurred to them that any litigation itself concerning the broker-dealer agreement wouldn't be in the Southern District of New York. And then they had a change in strategy, but they really can't get around their stipulation or the multiple letters they wrote to Finner in the years that have passed referring to Golden Empire and saying just wait until it's decided. Please don't have the arbitration go forward now. So I really, that's a background to this whole thing, and frankly it comes back to why Atlantic Marine is paramount. They shouldn't be permitted to run around and choose their form in that matter. That's what Atlantic Marine is about at heart, which is if you have a contract and the contract says a place you're supposed to do it, and here I'm just going to discuss geography, not arbitration versus court, not state versus federal, but you have a place, you can't go and wait until the day the mandate is filed and then the next morning, which is what they did here, run and think you get a different result. How do you get around Section 29? Your adversary argued that Section 29 essentially says you can't privately contract away the Finner rule. Section 29 is that substantive rights, not procedural rights? Isn't there a case law that says arbitration is a substantive right? I think that's not what the Shearson American Express case says, the Supreme Court says. The Supreme Court says that you can't waive substantive rights, but aren't there other cases including a Supreme Court case that tells you arbitration is a substantive right? I think, Your Honor, the weight of the authority, it's discussed in some detail in the Quinnipiac decision, there's one case that's addressed, the 29A, is that arbitration is not a substantive right. It's about where you decide your issues, not what law, not what rights, not other things that are tied under the Shearson American Express case to substantive issues. I think it's, again, this Court will make its own decision on the underlying issue if you get past Atlantic Marine, which, again, we submit you shouldn't. But these issues were considered by the Second Circuit in the context of Golden Empire. There was multiple letters submitted. As the judge in Quinnipiac noted, it was decided there. And then the judge in Quinnipiac went on and decided the substantive issue that you're asking me about right now. On patent, I think there are multiple reasons why you don't need to overrule it to reach the result we're asking, to answer the direct question that was asked of my opponent. What are they? It's not mandatory language, and so regardless of how the court in patent classified it, I submit to you that it is a classic submission to venue provision or jurisdiction provision, not a mandatory form selection provision. It's not specific. It has different words than the words here. I submit to you that the words actions and proceedings is significantly more specific as it relates to arbitrations than the word controversies. I think we have an admission by my opponent that actions and proceedings can cover arbitrations, and so there is no ambiguity in the clause that we have here and no argument, frankly, in the briefing below or up here or even, I think, before your honors, that it's ambiguity that's going on here. They think it's clear as day that they're right. We think we're clear as day that we're right. That doesn't create ambiguity that we tell you that we disagree. And you have the words actions and proceedings in the form selection clause. Is it your position that parties can contract away all the FIN rules, any of the FIN rules, some of the FIN rules, following on from what Judge Roth asked you when you were first up here? Well, they do so. Isn't that the biggest, isn't that a troubling outcome when these are supposed to be given the force of law? And from your perspective, you could privately contract around something with the force of law. Is that, what is the authority to do that? Well, your honor, I submit to you that parties do it all the time once they actually are in FINRA arbitrations. We make rules about disclosure of experts and timing of production of documents. We make rules about adding depositions, although the FINRA rules don't provide it. Those are procedural decisions being made in the course of a discovery exchange. We're talking about the FINRA rules like this one that says thou shalt arbitrate. Shouldn't there be a specific reference to the FINRA rule that's being waived if it's going to be waived? Well, your honor, I would submit to you this is not a waiver case. This is a supersede case. And if you look at the case law that's cited in the appellee's brief, the waiver is a very different situation. It's where parties delay seeking arbitration. Well, if you're going to supersede, if you're going to say this contract supersedes FINRA rules, shouldn't you describe what rules are being effected? Your honor, I submit to you that all actions and proceedings is broad enough and covers it, and to try and go through every single potential. It's my position that you don't need to specify what is being waived, superseded, or ignored by Bear Stearns. It's my position that the language in this contract is sufficient to do it. And if I could elaborate slightly, I see my time is – we have had cases – Your time's up. I've heard enough. Thank you, your honor, very much. Thank you for your argument. Counsel, thank you both for a well-briefed and well-argued case. We'll take the matter under advisement.